362 F.2d 980
 VIKING THEATRE CORPORATION, Appellant,
v.
PARAMOUNT FILM DISTRIBUTING CORPORATION, Columbia Pictures Corporation, Universal Film Exchanges, Inc., United Artists Corporation, Warner Bros. Pictures Distributing Corporation, Twentieth Century-Fox Film Corporation, Metro-Goldwyn-Mayer, Inc. (formerly Loew's, Inc.), Stanley Warner Management Corp., Stanley Company of America, William Goldman Theatres, Inc., and Fox Philadelphia Building, Inc.
 No. 15656.
 United States Court of Appeals Third Circuit.
 Argued March 24, 1966.
 Decided July 1, 1966.
 
 David I. Shivitz, New York City, (Halperin, Shivitz, Scholer & Steingut, New York City, Harry M. Pimstein, New York City, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Peter A. Eisenberg, New York City, Harry M. Pimstein, New York City, Hugh G. Moulton, Philadelphia, Pa., on the brief), for appellant.
 W. Bradley Ward, Philadelphia, Pa., for respondents, Metro-Goldwyn-Mayer, Inc., Columbia Pictures Corporation, United Artists Corporation, Universal Film Exchanges, Inc. and Paramount Film Distributing Corporation.
 Louis J. Goffman, Philadelphia, Pa., for respondent, Warner Bros. Pictures Distributing Corporation.
 Morris Wolf, Franklin Poul, Philadelphia, Pa., for respondents, Stanley Warner Management Corporation and Stanley Co. of America.
 Charles F. Young, New York City, Ralph Earle, II, Philadelphia, Pa., for respondents, Twentieth Century-Fox Film Corporation and Fox Philadelphia Building, Inc.
 Edwin P. Rome, Philadelphia, Pa., for respondent, William Goldman Theatres, Inc.
 Before McLAUGHLIN, HASTIE and GANEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This is an anti-trust suit which was dismissed summarily prior to trial.
 
 
 2
 A related action between substantially the same parties and covering an earlier time period had been tried before the same judge who had directed a verdict in favor of the defendants. This court affirmed that judgment. Certiorari was thereafter applied for on behalf of the appellant plaintiff. While that application was pending, the present litigation was called by said judge for pre-trial. From the record it is evident that he felt there had been some criticism of the pre-trial proceedings in the first case (called Viking I) and was anxious that there be no occasion for adverse comment with respect to the pre-trial in this second proceeding (Viking II). Plaintiff had local counsel of record, Mr. Sawyer. It was also represented by Messrs. Williams and Ungar of Washington, D. C.; in addition Mr. Straub was personal attorney for the president of plaintiff, Mr. Sley. On July 10, 1963, the judge wrote Mr. Sawyer, with a copy to all counsel, saying:
 
 
 3
 "In view of the decision of the Circuit Court of Appeals, is it your intention to proceed further with this case? If so, please advise me within the next several weeks at which time I will arrange a conference with all counsel to determine how we shall proceed with discovery by all counsel."
 
 
 4
 Mr. Sawyer replied by letter dated July 17, 1963 as follows:
 
 
 5
 "I am informed that my client intends to proceed with the above case (that is, the second Viking case) but also intends to seek a writ of certiorari with respect to Viking Theatre Corporation v. Paramount Film Distributing Corp., et al., No. 13656, Court of Appeals, and therefore request that no action be required of it pending the disposition of the petition by the Supreme Court of the United States."
 
 
 6
 The court replied to Mr. Sawyer the next day, July 18, 1963, saying inter alia as to Mr. Sawyer's previous letter, "As I read the letter you propose to try the second case regardless of the outcome of your petition for certiorari in the first case."
 
 
 7
 The court asked that all counsel attend a pre-trial conference on August 21, 1963.
 
 
 8
 Answering the above Mr. Sawyer wrote the court on August 7, 1963 telling of a discussion he had had, not with the plaintiff, but with Mr. Williams. He said:
 
 
 9
 "I have had some further discussion about this case with Edward Bennett Williams, Esquire, of Washington, D. C. and his associates, who are now representing the plaintiff and who are preparing the appeal to the Supreme Court. I am authorized to state that if the Supreme Court does not grant certiorari my client would not feel that he has sufficient grounds to proceed with the above case unless new evidence, hitherto unknown to us, were to come to light.
 
 
 10
 "Naturally we will take such steps or attend such pre-trial proceedings as Your Honor directs."
 
 
 11
 Mr. Ungar of Mr. Williams' firm was present at the conference on August 21st. He did not in any way question Mr. Sawyer having limited his statement to the situation arising "if the Supreme Court does not grant certiorari * * *." He did have some remarks with respect to the type of new evidence referred to by Mr. Sawyer. He thought "If certiorari is granted there can be a considerable problem. It would seem to me that it might be a good idea to cope with that problem if and when it should arise in view of the statistical likelihood that certiorari will be denied, since nine out of ten are denied; and if that happens it will happen rather quickly because the petition will be filed in about a month and action on it, if there is a denial, will probably come not too long thereafter."
 
 
 12
 After some dialogue with Mr. Ungar the record shows the following:
 
 
 13
 "The Court: In the meantime, your decision still stands that under the present state of facts as they exist today you do not intend to try the second Viking case.
 
 
 14
 Mr. Ungar: That's exactly right. That's a commitment so far as we are concerned.
 
 
 15
 The Court: Very good. Thank you very much.
 
 
 16
 Now I want to ask you this, too, Mr. Ungar:
 
 
 17
 I have reviewed both of these cases and complaints. Are there any differences in the issues between the first Viking case and the second Viking case?
 
 
 18
 Mr. Ungar: Well, there Your Honor has the advantage of me because I am frank to say that I have not reviewed anything in the second Viking case. I have had my hands pretty full with the first and still bear some of the wounds."
 
 
 19
 On December 21, 1964, there was an application by Mr. Sley, president of plaintiff, for time in which to employ new counsel in place of Mr. Williams and Mr. Ungar and Mr. Sawyer and his firm who no longer wished to represent plaintiff. Mr. Ungar who was in court stated he and Mr. Williams had taken a position regarding the second case and had given Mr. Sley "certain advice with respect to the second case, which he had elected not to take." Therefore Mr. Williams and Mr. Ungar desired to be relieved of their representation of plaintiff. The latter was allowed until April 1, 1965 in which to obtain a new attorney.
 
 
 20
 On May 20, 1965, there was what was designated as "Initial Pre-trial Conference" in this matter. Mr. Shivitz for his firm appeared on behalf of plaintiff. The court discussed the two prior conferences at considerable length and then put Mr. Sawyer on the stand. The latter reread that part of his letter of August 7, 1963 to the court which stated "I am authorized to state that if the Supreme Court does not grant certiorari my client would not feel that he had sufficient grounds to proceed with the above case unless new evidence, hitherto unknown to us, were to come to light." The court also had Mr. Straub, personal attorney for Mr. Sley, testify. He said that he talked with Mr. Sley as follows:
 
 
 21
 "Q. And what did you tell him then?
 
 
 22
 A. Well, I explained to him that there was to be this pre-trial conference and that I had talked with Mr. Williams about it.
 
 
 23
 In addition to the correspondence, I also talked to him about the — Mr. Williams, I am talking to now, Mr. Williams and Mr. Ungar — and I explained to him that the Court was insisting upon something being done at this pre-trial conference and that the best that I could get from Mr. Williams was that if he didn't get certiorari to the Supreme Court or new evidence that he would so have to advise the Court that he would not proceed with the second suit.
 
 
 24
 If he did not get certiorari — now that's the way I understood it at all times and that's what I explained to Mr. Sley.
 
 
 25
 He, of course, was very unhappy about it and that's about the best thing I can say to you."
 
 
 26
 After the above conference the court called for a motion to dismiss the action on behalf of the defendants. A motion was filed which read:
 
 
 27
 "Defendants move the Court to dismiss the action on the ground that plaintiff is precluded from maintaining it by the stipulation and commitment entered into at the pre-trial conference of August 21, 1963; and on the alternative ground that plaintiff has failed to prosecute the action."
 
 
 28
 There was argument on that motion, July 20, 1965. On September 1, 1965, the court filed an opinion and order dismissing the complaint.
 
 
 29
 The trial court in its first five conclusions of law holds:
 
 
 30
 "1. There is no difference in legal effect, in the present context, between the Supreme Court granting certiorari, having argument, and then, by a divided Court, affirming the decision of the Circuit Court of Appeals and the Supreme Court refusing certiorari in the first instance. II N.T. 50.
 
 
 31
 "2. Although the statements of counsel referred almost exclusively to discontinuance of Viking No. 2 if certiorari was denied in Viking No. 1, the effect of those statements was to cause the Court to allow Viking No. 2 to remain on the docket although otherwise subject to dismissal for lack of prosecution.
 
 
 32
 "3. The final result in Viking No. 1 is no different in its bearing on Viking No. 2 than if certiorari had been denied, and Viking No. 1 terminated at the stage of petition for certiorari, instead of — as it turned out — being terminated after a hearing before the Supreme Court.
 
 
 33
 "4. Counsel had authority to make the statements in question which induced this Court to permit Viking No. 2 to remain on the docket without prosecution for several years after it became subject to dismissal under Local Rule 18.
 
 
 34
 "5. Plaintiff will not be heard to deny the actual authority of counsel to make such statements. It is axiomatic that the effectiveness of the pre-trial system depends upon counsel's authority to take the necessary steps toward stipulation, simplification of the issues, and the like in accordance with Rule 16, Fed.R.Civ.P."
 
 
 35
 Lipp v. National Screen Service Corporation, 188 F.Supp. 245 (E.D.Pa. 1960), affd. 290 F.2d 321 (3 Cir. 1961), cert. den. 368 U.S. 835 and Main Line Theatres, Inc. v. Paramount Film Distributing Corporation, 298 F.2d 801 (3 Cir. 1962), cert. den. 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 said the trial court "* * * are deemed ample authority for the present order of dismissal." The court then went on to fully state its theory saying:
 
 
 36
 "Plaintiff, however, insists that the agreement is subject to strict construction, in accordance with certain cases to be discussed below. Construing the words in question, however, with the literalism for which plaintiff argues would be an unwarranted reversion to principles of strictissimi juris. The only reasonable understanding, shared by all concerned, was that the second case would be dismissed if the first was disposed of adversely to plaintiff. To make the result turn on the literal application of the jargon of `certiorari granted' — regardless of the futility of the issuance of such order — would be to revert to primitive law. Complicated litigation under modern remedial laws such as the antitrust statutes cannot turn on a matter of the choice of two words as though subject to the formulary pleading principles of early Roman law."
 
 
 37
 Reserving the prime question of authority and despite considerable wordage, with some later and confessedly nonbinding conjectures and attempted interpretations, the only real issue before us is whether Mr. Sawyer's language in his letter of August 7, 1963 to the trial judge means what it says. In that letter Mr. Sawyer first explained that he had had further discussion about the case with Mr. Williams and the latter's associates who were representing the plaintiff and were preparing "the appeal" of Viking I to the Supreme Court. Sawyer continued, saying, "I am authorized to state that if the Supreme Court does not grant certiorari my client would not feel that he has sufficient grounds to proceed with the above case unless new evidence, hitherto unknown to us, were to come to light." (Emphasis supplied.) For whatever it was worth, the statement of the attorney of record for the plaintiff made after going over the particular problem with trial counsel, is crystal clear. It is a lawyerlike, comprehensive declaration of what the attorney presented as his client's position. The first part of it at least, with which we are mainly concerned, makes complete sense and represents sound professional judgment. With no justification this is arbitrarily taken to mean that "The only reasonable understanding, shared by all concerned, was that the second case would be dismissed if the first was disposed of adversely to the plaintiff." Admittedly no one had anticipated what actually happened. As was noted at oral argument it is troubling to witness the effort to interpret the precise Sawyer statement as now covering a situation that nobody anticipated. Unexpectedly certiorari was granted. That ended the life of the Sawyer representation which was the only tangible excuse for alleging any sort of a plaintiff's commitment to dismiss this suit.
 
 
 38
 The Lipp and Main Line decisions, supra, relied on to support the dismissal are both of them vitally different in their facts from this appeal. They have no application here.
 
 
 39
 Rule 16 of the Federal Rules of Civil Procedure is titled "Pre-Trial Procedure: Formulating Issues." This rule is for trial preparation. There is nothing in it to countenance an attorney agreeing to the dismissal of his client's cause of action as is asserted by appellees.
 
 
 40
 On the question of authority from the plaintiff to any or all of its attorneys to consent to the dismissal of Viking II, even within the Sawyer letter limitation, the only actual statement is by Mr. Sley, plaintiff corporation's president. In open court at the December 21, 1964 pre-trial hearing he flatly denied that plaintiff's lawyers had authority to enter into a stipulation in connection with the abandonment of the Viking II claim. And there is no word of argument let alone evidence in this appeal that plaintiff ever gave that grant to its attorneys. Because of the firm view we take of the Sawyer letter we will not pass upon the proposition of whether it, absent the direct approval of the plaintiff, could bind plaintiff even as far as it went.
 
 
 41
 The remaining point deals with the alternate ground of the defense motion to dismiss, viz., failure to prosecute. The trial court itself refused to accept this contention. While we cannot agree with the reasoning as to this below, under the facts we find no merit in the point itself. It does not warrant discussion.
 
 
 42
 The judgment of the district court will be reversed. This appeal will be remanded to that court for trial on the merits.